**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | |
|---|---|
| JILLIAN KETELSEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  Case No. 06-4008 |
| | ) |
| RONALD SMITH, ET AL., | ) |
| | ) |
|     Defendants. | ) |
| | ) |

**O R D E R**

Before the Court is Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Doc. #6]; and Plaintiff's Resistance to Defendants' Motion [Doc. #9]. For the reasons that follow, Defendants' Motion will be DENIED IN PART and GRANTED IN PART.

**I.   Background**

For the purposes of this motion, the following facts which are alleged in the Amended Complaint will be accepted as true. See Williams v. Ramos, 71 F.3d 1246, 1250 (7th Cir. 1995). From September 1, 2004, through June 8, 2005, Plaintiff Jillian Ketelsen ("Jillian") was employed by the Wells Center as a Substance Abuse Counselor. Pursuant to a contract between the Wells Center and the Illinois Department of Corrections ("IDOC"), Jillian provided substance abuse counseling to juveniles at the Kenawee Youth Center ("KYC").

Beginning in January 2005, Jillian alleges that she was

falsely accused of having a personal relationship with one of the youths at the KYC, in particular a juvenile by the name of T.K. During that time, Jillian was also accused of exposing her breasts to the youth. Although an investigation into the later incident found the claim to be without merit, allegations concerning Jillian and inappropriate personal relationships with other youth continued. In particular, Defendant Ronald Smith ("Smith"), Chief of Security at the KYC, alleged that in May 2005, Jillian allowed a youth to place his head in her crotch area. Smith also encouraged incarcerated youth to spy on Jillian and report to him how often T.K. was with her. Furthermore, on June 5, 2005, Defendant Matthew Doug Linze ("Linze"), a Correction Counselor at the KYC, submitted an incident report claiming that Jillian was attempting to keep T.K. in treatment for her own personal benefit.

Jillian alleges that in addition to the false allegations, she also endured acts of sexual harassment. On multiple occasions Linze made sexually explicit remarks toward Jillian. Specifically, on May 24, 2005, Linze told Jillian that he would "fuck her every night if he had a girlfriend that looked like her" and on June 1, 2005, he stated that he "likes to eat pussy." Although Jillian complained about Smith and Linze to Defendant Jennifer Stoudt ("Stoudt"), Warden at the KYC, no investigation was conducted.

In response to the allegations that Jillian had maintained inappropriate relationships with youth, Warden Stoudt refused to

give Jillian access to the KYC on June 5, 2005. In addition, Warden Stoudt and Smith both recommended to IDOC Deputy Director, Freedhauer, that Jillian not be allowed to transfer to other IDOC facilities. At a meeting on June 8, 2005, the Wells Center sought to have Jillian reinstated to her position, but despite having no evidence supporting the false allegations, Warden Stoudt and Smith denied Jillian's reinstatement. As a result of Jillian being barred from working at IDOC facilities, the Wells Center terminated her employment on June 7, 2005.

## II. Legal Standard

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must view the complaint in the light most favorable to the plaintiff and the complaint's well-pleaded factual allegations must be accepted as true. <u>Williams v. Ramos</u>, 71 F.3d 1246, 1250 (7th Cir. 1995). Therefore, a complaint can only be dismissed if a plaintiff cannot prove any set of facts upon which relief can be granted. <u>Travel All Over the World, Inc. v. Kingdom of Saudi Arabia</u>, 73 F.3d 1423, 1429-30 (7th Cir. 1996). However, this Court is not bound by a plaintiff's legal conclusions. <u>Baxter by Baxter v. Vigo County School Corp.</u>, 26 F.3d 728, 730 (7th Cir. 1994).

## III. Analysis

In support of their Motion to Dismiss, Defendants argue that (1) Count IV fails to state a claim because a Title VII cause of

action may not be pursued under 42 U.S.C. § 1983; (2) Count III fails to state a claim as Jillian was not deprived of either a property or a liberty interest; (3) Defendants are protected by the doctrine of qualified immunity; and (4) Counts I and II are barred by the doctrines of sovereign immunity and public official immunity. The Court will address each of these arguments in turn.

### 1. Jillian may not bring a Title VII cause of action under section 1983 but Count IV does state a claim.

Section 1983 does not create substantive rights but instead provides an avenue to pursue claims for the violation of rights created elsewhere. Albright v. Oliver, 510 U.S. 266, 271 (1994). Therefore, in order to pursue a claim under § 1983, a plaintiff must allege conduct by someone acting under color of state law, which deprives the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Maine v. Thiboutot, 448 U.S. 1, 1 (1980); see also Trigg v. Fort Wayne Cmty. Schools, 766 F.2d 299, 300 (7th Cir. 1985).

In this case, it is not disputed that Defendants were acting under color of law. Instead, Defendants contest the substantive basis of Jillian's § 1983 action. In particular, Defendants argue that Jillian may not bypass the procedures of Title VII by bringing suit directly under § 1983.

Defendants' assertion is correct in that a complaint that only consists of a Title VII violation may not form the basis of a § 1983 claim. See Alexander v. Chicago Park Dist., 773 F.2d 850, 855

(7th Cir. 1985) (stating that a right created by Title VII must be pursued through the procedural system established by Title VII); see also Gray v. Lacke, 885 F.2d 399, 414 (7th Cir. 1989) (stating that § 1983 does not provide a remedy for violations of rights created by Title VII). However, Jillian has also pled facts alleging constitutional violations. A plaintiff who puts forth facts which suggest both a Title VII violation and a constitutional violation may assert a claim independent of the Title VII violation and pursue that independent claim through § 1983. Gray, 885 F.2d at 414. Therefore, Count IV is not dismissed and Jillian may pursue only her allegations of constitutional violations through § 1983, not Title VII claims.

Furthermore, even if it was permissible for Jillian to pursue Title VII claims under § 1983, she would be unable to do so in this case. To establish a Title VII claim, the plaintiff carries the burden of demonstrating the existence of an employer/employee relationship. See Alexander v. Rush North Shore Med. Center, 101 F.3d 487 (7th Cir. 1996). Jillian, however, has conceded that she is not an IDOC employee. [Doc. #9, pg. 5]. Therefore, she is unable to state a claim under Title VII.

**2.   Count III states a claim for deprivation of due process.**

The Fourteenth Amendment prohibits States from depriving a person of life, liberty or property without due process of law. See U.S. Const. amend. XIV, § 1. Therefore, in examining Jillian's

5

procedural due process claim, the Court must first determine "the *nature* of the interest at stake . . . to see if the interest is within the Fourteenth Amendment's protection of liberty and property." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972) (emphasis in the original).

> **a. Jillian has failed to state a cause of action for deprivation of a protected property interest in her employment.**

Protected property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Id. at 577. Furthermore, to have a property in a benefit, a person must have a legitimate claim of entitlement to it, not an abstract need or desire for it. Id.

Jillian contends that the KYC's and the IDOC's rules and procedures that forbid sexual harassment, discrimination, and retaliation and require adequate investigation of such allegations created in her a property interest in continued employment. While the KYC and the IDOC may indeed have rules that prohibit certain conduct and procedures for investigating violations of those rules, this does not establish that Jillian had a protected property interest in continued employment. If the Court were to accept Jillian's reasoning, then all at-will employees would have a property interest in their employment based solely on the fact that certain conduct is prohibited by the employer. However, the mere

6

fact that the KYC and the IDOC may have grievance procedures does not create "for cause" employment or a property interest. See Border v. Crystal Lake, 75 F.3d 270, 275 (7th Cir. 1996) (stating that a plaintiff that claims a property deprivation in the loss of her job must show entitlement to the job and not merely that she was entitled to procedures).

Furthermore, Jillian was not a party to the contract between the IDOC and the Wells Center, nor does the contract provide that Wells Center employees working at IDOC facilities may be terminated only "for cause".  Therefore, Jillian has failed to establish a protected property interest in her employment.

   b.   **Jillian has pled facts that demonstrate a violation of her liberty interest and therefore Count III states a claim.**

Defendants contend that Jillian is unable to establish the deprivation of a liberty interest since she does not have a protected property interest in her job. However, in asserting the deprivation of a liberty interest, a plaintiff does not need to have a protected property interest in her job. Harris v. Auburn, 27 F.3d 1284, 1286 (7th Cir. 1994).  In order to state a claim for deprivation of a liberty interest, a plaintiff must show that (1) she was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed, and (3) she suffered a tangible loss of other employment opportunities due to public disclosure.  Id.

Defendants argue that Jillian fails to state a claim for the violation of a liberty interest due to the fact that she was not an employee of the IDOC, nor was the IDOC or the named Defendants her employer.  However, this argument is unfounded.  To state a claim for deprivation of a liberty interest, a plaintiff must first show that a public official made defamatory statements about her. Strasburgh v. Board. of Educ., 143 F.3d 351, 356 (7th Cir. 1998). This element requires that the statements come from a public official, not that the public official serve as the plaintiff's employer.  Jillian has put forth allegations that such statements were made by IDOC employees acting in their official capacity.

Defendants also argue that Jillian's complaint fails to meet the essential elements for establishing the deprivation of a liberty interest due to the fact that the stigmatizing information was not publicly disclosed.  See Olivieri v. Rodriquez, 122 F.3d 406, 408 (7th Cir. 1997)(holding that dissemination is a crucial element in establishing the deprivation of a liberty interest and that self-dissemination is not sufficient).  However, Jillian does not base her claim on self-dissemination and puts forth facts indicating that the information was in fact publicly disclosed.  In her Amended Complaint, Jillian indicates that Defendants' false allegations were disclosed to the Wells Center, the KYC, IDOC staff and management, and IDOC Deputy Director, Freedhauer.  Thus, at this stage in the proceedings, Jillian has sufficiently pled that

the stigmatizing information was publicized.

### 3. Defendants are not entitled to qualified immunity.

A state official is entitled to qualified immunity unless his conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Therefore, in analyzing the existence of qualified immunity, it is necessary to determine whether the defendant's conduct violated a constitutional right and whether that right was clearly established at the time of the violation. Crull v. Parkhurst, 384 F.3d 453, 460 (7th Cir. 2004).

Defendants argue that they are entitled to qualified immunity because Jillian has failed to produce a closely analogous case. However, the existence of a prior case on point is not determinative of whether a right was clearly established at the time of the violation. Coady v. Steil, 187 F.3d 727, 734 (7th Cir. 1999). Rather, the focus should be on whether a reasonable person would have known that his actions were unlawful. Id.

In her Amended Complaint, Jillian has set out allegations that Defendants have violated her constitutional rights and that such rights were established at the time of Defendants' conduct. In addition, Jillian puts forth facts which allege that Defendants knew that their conduct was unlawful. Therefore, Defendants are not protected by qualified immunity against Jillian's § 1983 claims at this time.

### 4. The Court of Claims has exclusive jurisdiction over Counts I and II.

Although the Illinois Constitution abolished sovereign immunity, the Illinois legislature, similar to the federal government, has set forth parameters or limitations in pursuing such claims against the state. See Ill. Const. 1970, art. XIII, § 4; 745 ILCS 5/1; 705 ILCS 505/1. Specifically, the Court of Claims Act established that the Court of Claims has exclusive jurisdiction over all tort claims against the state of Illinois. 705 ILCS 505/8(d).

The determination of whether an action is against the state does not depend on the formal designation of the parties, but instead on the issues involved and relief sought. Fritz v. Johnston, 807 N.E.2d 461, 466 (Ill. 2004) (stating that actions against state employees must sometimes be characterized as actions against the state); Healy v. Vaupel, 549 N.E.2d 1240, 1247 (Ill. 1990). An action will be deemed as against the state when (1) there are no allegations that an agent of the state acted beyond the scope of his authority; (2) the duty alleged to have been breached was not generally owed to the public independent of state employment; and (3) the complained-of actions involve matters ordinarily within the state agent's normal and official functions to the state. Healy, 549 N.E.2d at 1247, quoting Robb v. Sutton, 498 N.E.2d 267, 272 (Ill. App. Ct. 1986).

Jillian argues that her claims in Counts I and II are not

against the state because she has put forth allegations that Defendants acted in violation of statutory and constitutional law. See Healy, 549 N.E.2d at 1247 (holding that a claim may be brought in circuit court when a plaintiff puts forth allegations that a state agent acted in violation of statutory or constitutional law or in excess of his authority). However, Jillian does not make such allegations in Counts I and II. Instead, in Counts I and II, Jillian claims that Defendants Smith and Stoudt intentionally interfered with her employment relationship with the Wells Center in violation of state law. She does not set out her claims for violations of constitutional law until her later counts. Furthermore, Jillian does not cite to any case law, nor is the Court aware of any case law, that holds that a plaintiff may bypass the requirements of the Court of Claims Act by alleging a constitutional or statutory violation in one count, but not the count in question.

Moreover, Jillian's claims that Smith and Stoudt intentionally interfered with her employment relationship with the Wells Center are similar to the plaintiff's claims in Wozniak v. Conry, 679 N.E.2d 1255 (Ill. App. Ct. 1997). In Wozniak the plaintiff alleged that the defendant had interfered with his employment relationship when the defendant knowingly made false allegations about the plaintiff. The court held that the plaintiff's claim was against the state because the defendant's comments were in regard to personnel decisions and work-related conduct within the scope of

11

his authority.  Id. at 1260.

In Count I and II, Jillian alleges that Smith made false statements about her, claiming that she had boundary issues with the youth.  She also alleges that Smith and Stoudt recommended that she not be transferred to any other IDOC facility.  Much like the defendant's comments in Wozniak, Smith and Stoudt's comments were within the scope of their authority and related to personnel decisions and work-related conduct between the IDOC and Wells Center employees, such as Jillian.  Therefore, Jillian's claims in Counts I and II are against the state and, as a result, the Court of Claims has exclusive jurisdiction.  Furthermore, since Counts I and II are dismissed, it is unnecessary for the Court to address the issue of public official immunity.

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss [Doc. #6] is GRANTED IN PART, and DENIED IN PART.  It is granted in respect to Jillian's deprivation of property interest claim in Count III and her claims for tortious interference with her employment relationship with the Wells Center in Counts I and II of her Amended Complaint.  It is denied in all other respects.

ENTERED this  11th  day of August, 2006.

   /s/ Joe B. McDade
   JOE BILLY McDADE
   United States District Judge