## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | |
|---|---|
| JILLIAN KETELSEN,            ) | |
|                                ) | |
|     Plaintiff,            ) | No. 06-4008 |
|                                ) | |
| v.            ) | |
|                                ) | |
| RONALD SMITH, et al.,            ) | |
|                                ) | |
|     Defendants.            ) | |

### **O R D E R**

Before the Court is Defendants' Motion for Summary Judgment, filed October 10, 2007. (Doc. 21.) Plaintiff filed a Response on November 5, 2007. (Doc. 24.) Also before the Court is a related Motion to Strike filed by Defendants on November 21, 2007. (Doc. 26.) Plaintiff filed a Response to the Motion to Strike on December 4, 2007. (Doc. 28.) For the following reasons, Defendants' Motion to Strike is GRANTED, and Defendants' Motion for Summary Judgment is GRANTED.

### BACKGROUND

Plaintiff was employed by the Wells Center as a substance abuse counselor from September 1, 2004 through June 8, 2005. (Doc. 1 at 2.) Pursuant to a contract between the Wells Center and the Illinois Department of Corrections (hereinafter "IDOC"), Plaintiff provided substance abuse counseling to youth inmates detained at the Kewanee Youth Center (hereinafter "KYC"). (Doc. 1 at 2.) Defendant Ronald Smith was Chief of Security at the KYC during Plaintiff's employment. (Doc. 22 at 4.) Defendant Jennifer Stoudt was the warden of the KYC from December 1, 2004 through December 15, 2005. (Doc. 22 at 3.)

During the course of Plaintiff's employment, Defendant Stoudt raised concerns about Plaintiff's conduct to Wells Center supervisors. (Doc. 22 at 5.) In June of 2005, Defendant Stoudt determined that Plaintiff was unsuitable for employment in a correctional setting, and denied Plaintiff access to the KYC. (Doc. 22 at 5.) Defendant Stoudt informed her supervisor, Deputy Director Kurt Fredenaur, and Debi Rouch and Bruce Carter of the Wells Center that Plaintiff was denied access because "she had boundary issues that made her unsuitable for a correctional setting." (Doc. 22 at 6.) Because Plaintiff was barred from working at the KYC, the Wells Center terminated her employment on June 7, 2005. (Doc. 1 at 4.)

Plaintiff alleges that she was falsely accused of having a sexual relationship with a particular youth at the KYC (hereinafter "Youth K"), and that these false allegations led to her dismissal from the KYC. (Doc. 1 at 2.) During this time, Plaintiff was also accused of exposing her breasts to a youth. (Doc. 1 at 2.) An investigation found the accusations of sexual misconduct to be without merit. (Doc. 22 at 5.) However, Plaintiff alleges that Defendant Smith continued to accuse her of having inappropriate relationships with youths, including accusations that she allowed a youth to sit with his head in her lap. (Doc. 1 at 2.) Plaintiff further alleges that Defendant Smith had other youths spy on Plaintiff and report back to him as to how frequently she was with Youth K. (Id.) Plaintiff alleges Defendant Stoudt refused Plaintiff access to the KYC in response to Defendant Smith's accusations. (Doc. 1 at 4.)

Defendants allege that during Plaintiff's employment at the KYC, several security concerns were raised regarding her conduct. These concerns include failing to secure doors, being unable to account for missing supplies, removing her shoes during group sessions with youths, and addressing youths regarding sensitive matters without first speaking with her supervisor. (Doc. 22 at 4-5.) For these reasons, Defendant Stoudt determined that Plaintiff was

not suitable for a correctional setting and denied Plaintiff access to the KYC. (Doc. 22 at 5.) Defendants further claim that neither Smith nor Stoudt had ever commented to anyone regarding Plaintiff's skills or abilities as a counselor. (Doc. 22 at 6.)

Defendants admit they were aware that youths had made allegations that Plaintiff paid special attention to Youth K and spent a disproportionate amount of time with him. (Doc. 22 at 5.) Additionally, there were indications that Plaintiff intended to keep Youth K under her supervision despite the fact that he had completed the program. (Doc. 22 at 5.) However, at no time do Defendants indicate they ever believed Plaintiff had a sexual relationship with Youth K, or any other youth at the KYC. The only place where such accusations are made is in Plaintiff's own Complaint, her deposition statements, and in incident reports that she authored.

Following Plaintiff's dismissal from the KYC, she obtained positions at Texas Roadhouse as a bartender, TASC (an organization working with Department of Court Services) as a case manager for substance abuse patients, and Ashford University as an Admissions Counselor. (Doc. 22-3 at 12-13.) Plaintiff also applied for positions with the Clinton Community School District as a counselor, (Ketelsen Dep. at 34), Moline High School as a truancy officer, (Ketelsen Dep. at 34), Generations as a case manager for elderly patients, (Ketelsen Dep. at 33), Transitions as a mental health counselor, (Ketelsen Dep. at 31), Child Abuse Council as an abused child counselor, (Ketelsen Dep. at 30), and Family Resources as a domestic abuse advocate, (Ketelsen Dep. a 25). Plaintiff does not allege she failed to obtain these positions due to any conduct by Defendants. Rather, the only reasons she gives for not obtaining these positions are that the employers were not interviewing at that time (Ketelsen Dep. at 31), salary offers were too low (Ketelsen Dep. at 27), and there were many applicants for the positions (Ketelsen Dep. at 34).

Plaintiff filed a Complaint against Defendants on December 21, 2005. Count I of the Complaint alleges intentional interference with employment against Defendant Smith. Count II alleges intentional interference with employment against Defendant Stoudt. Count III alleges a procedural due process violation against both Defendants under 42 U.S.C. § 1983 and claims deprivation of Plaintiff's "liberty and/or property interest" in continued employment in her chosen field. (Doc. 1-3 at ¶ 25.) Count IV alleges sexual harassment and discrimination against Defendants Smith, Stoudt and Matthew Doug Linze under § 1983.

Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) on March 24, 2006. (Doc. 6.) This Court granted the Motion to Dismiss in regard to Counts I and II and the property interest claim in Count III, and denied the Motion regarding Count IV and the liberty interest claim in Count III. (Doc. 13.) On March 30, 2007, the parties agreed to dismiss all claims against Defendant Linze, thereby eliminating Count IV. (Doc. 19.)

Defendants Smith and Stoudt now bring this Motion for Summary Judgment and a related Motion to Strike. Defendants have also raised a claim of qualified immunity against Plaintiff's claims. We address each issue separately.

**Qualified Immunity**

"The test for determining whether a public official defendant is entitled to qualified immunity is an objective one." Triad Assoc. v. Robinson, 10 F.3d 492, 496 (7th Cir. 1993). Qualified immunity applies when (1) the alleged conduct violates a constitutional right and (2) the constitutional right is clearly established at the time in question. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity allows officials to carry out their duties confidently, without fear of incurring unexpected liability, and it allows courts to dispose of insubstantial

4

claims prior to trial, sparing officials from unnecessary litigation. Anderson v. Creighton, 483 U.S. 635, 639 (1987).

The Defendants assert, and the Court agrees, that Defendants are protected by qualified immunity. However, qualified immunity is ultimately not relevant in this case because Defendants did not violate a constitutional or statutory duty when they barred Plaintiff from the KYC for security reasons. Further, Plaintiff has no established right to continued employment. Though Plaintiff argues that a reasonable public official would have known that they could not refuse access to an employee for the "poisonous charges" of inappropriate relations with a youth, the argument does not apply here because Plaintiff offers no proof that the dismissal was based on inappropriate relations. Based on the Court's finding and discussion below, Plaintiff is unable to show a violation of a constitutional right and therefore Defendants' right to qualified immunity is irrelevant.

## I.  SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears

the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); see also Celotex Corp., 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record—only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

## ANALYSIS

Defendants seek summary judgment on the surviving Counts of deprivation of liberty interest and sexual discrimination. The deprivation of liberty interest claim is discussed in detail below, however Plaintiff failed to address the sexual discrimination claim in her Response to the Motion for Summary Judgment. In fact, it appears as though Plaintiff has abandoned that claim entirely, as her response indicates that "Plaintiff is uncertain why defendants devote the majority of pages 16-23 of their brief to claims other than the liberty interest claim, which is the only

claim that remains in this case." (Resp. to Mot. for Summ. J. 38, n.1.)  Because Plaintiff does not bring any facts or evidence related to a sexual discrimination claim to the Court's attention in her Response, Defendants' Motion is GRANTED as to that claim.  Celotex Corp., 477 U.S. at 323.

Plaintiff is unable to show sufficient evidence to support a claim for deprivation of liberty interest under the Fourteenth Amendment.  The Fourteenth Amendment prohibits States from depriving a person of life, liberty or property without due process of law.  U.S. Const. amend. XIV, § 1.  To succeed on a claim for deprivation of liberty interest, a plaintiff must show each of the following three factors:

1. Plaintiff was stigmatized by the defendant's conduct;
2. The stigmatizing information was publicly disclosed; and
3. Plaintiff suffered a tangible loss of other and future employment opportunities as a result of public disclosure.

Harris v. Auburn, 27 F.3d 1284, 1286 (7th Cir. 1994); Townsend v. Vallas, 256 F.3d 661, 669-671 (7th Cir. 2001).

### A.  Plaintiff Was Not Stigmatized by Defendants' Conduct

A stigma infringes liberty interests when it "seriously damages a person's reputation." Bollow v. Fed. Res. Bank, 650 F.2d 1093, 1101 (9th Cir. 1981).  "The employee's good name, reputation, honor, or integrity must be called into question in such a way as to make it virtually impossible for the employee to find new employment in his chosen field."  Olivieri v. Rodriguez, 122 F.3d 406, 408 (7th Cir. 1997).  Further, "there is no suggestion that [a] state, in declining to re-employ [an employee] imposed a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972).

Though the Court agrees that accusations of sexual misconduct are stigmatizing and may damage a person's name and reputation, Plaintiff has produced no evidence that either Defendant made such accusations. The allegation that she showed her breasts came from a youth at the KYC, and though Plaintiff claims Defendant Smith falsely accused her of having "inappropriate personal relationships with youth," (Compl. ¶ 10) she has produced no evidence that Defendant Smith made any such accusation.

According to Defendant Stoudt, Plaintiff was denied access to the KYC based on "boundary issues that made her unsuitable for a correctional setting." (Stoudt Aff. ¶ 21.) Both Defendants' Motion for Summary Judgment and Plaintiff's Response draw different meanings from the term "boundary issues." (Mo. Summ. J. 12 & Resp. Summ. J. 25.) Plaintiff argues that reading the facts in a light most favorable to the non-moving party, "boundary issues" implies inappropriate personal relationships with youth. (Resp. to Mot. for Summ. J. 25.) Plaintiff has also submitted the affidavit of Kim Kallman, who states her belief that the term refers to inappropriate personal relationships or contact with youth clients. (Kallman Aff. ¶ 11.) Defendants, in contrast, argue the term "boundary issues" implies only that Plaintiff's actions were unsuitable for the correctional setting based on her attire, overly casual interaction with youth, losing sight of her surroundings, and accountability for equipment and supplies. (Smith Aff. ¶¶ 9-11); (Stoudt Aff. ¶¶ 4-6.)

Although the Court must view the facts in a light most favorable to the Plaintiff, Kallman's affidavit must not be treated as fact because it is only a "mere allegation." See Fed. R. Civ. P. 56(e)(2). Kallman provides no basis for her statement, and does not allege that her understanding of the meaning of the term "boundary issues" stems from any conversation with Defendants or common terminology in the KYC. Therefore, the "boundary issue" claim does

not raise a triable issue of fact based on the affidavit. Additionally, even when viewing the facts in a light most favorable to the Plaintiff, concerns related to sitting on the ground with youth and not wearing shoes do not imply accusations of sexual misconduct. Federal courts typically reject claims that a stigma has been created by innuendo inferences drawn from general allegations. Mascho v. Gee, 24 F.3d 1037, 1039 (8th Cir. 1994). Therefore, Plaintiff has not raised a triable issue of fact as to whether she was stigmatized by the Defendants conduct.

### B. The Stigmatizing Information Was Not Publicly Disclosed

Unpublicized accusations do not infringe upon constitutional liberty interests because, by definition, they cannot harm "good name, reputation, honor, or integrity." Hodge v. Jones, 31 F.3d 157, 165 (4th Cir. 1994). To accompany firing a worker with public charges, thereby making it unlikely that anyone will hire a person for a comparable job, infringes upon one's liberty interest in occupation. Colaizzi v. Walker, 812 F.2d 304, 305 (7th Cir. 1987). Statements and accusations made in private are not actionable. Munson v. Friske, 754 F.2d 683, 694 (7th Cir. 1985). A plaintiff may not merely allege a likelihood of public disclosure. Johnson v. Martin, 943 F.2d 15, 16 (7th Cir. 1991). Dissemination is a crucial element in establishing the deprivation of a liberty interest, and self-dissemination is not sufficient. Olivieri, 422 F.3d at 408.

Plaintiff first argues the issue of public disclosure was already decided by this Court in its denial of Defendants' Motion to Dismiss[1]. (Resp. to Mot. for Summ. J. 31.) However, this is an improper argument because the Motion to Dismiss was based solely upon the facts pleaded in the Complaint. On this Motion for Summary Judgment, however, Plaintiff can no longer rely on the

---

[1] The Court's previous order states:"…Jillian indicates that Defendants' false allegations were disclosed to the Wells Center, the KYC, IDOC staff and management, and IDOC Deputy Director, Fredenauer. Thus, at this stage in the proceedings, Jillian has sufficiently pled that stigmatizing information was publicized." (Order at 8.)

9

facts as pleaded, but bears the burden of proving a factual dispute based on evidentiary materials. Fed. R. Civ. P. 56(e)(2); Celotex Corp., at 477 U.S. at 323.

Plaintiff next argues that because the allegations were disseminated to two members of the Wells Center (Debi Rouch and Bruce Carter), the KYC staff and management, and IDOC Deputy Director Fredenauer, the charges were publicly disclosed. This Court fails to see how disclosing concerns about an employee's suitability for a position to that employee's supervisors is "public disclosure." Further, Plaintiff cites no additional case law or evidence to prove any public disclosure. Even if Plaintiff could prove that it was possible or even likely that the charges would be publicly disclosed due to the number of people who knew of the charges, the mere likelihood of dissemination does not qualify as public disclosure. Johnson 943 F.2d at 16.

Ultimately, the factor of public disclosure is irrelevant based on the third factor, as discussed below, because Plaintiff is unable to prove that she lost future employment opportunities as a result of any public disclosure.

    **C.    Plaintiff Did Not Suffer A Tangible Loss In Future Employment Opportunities As A Result of Public Disclosure**

Any time an employee is involuntarily terminated, some stigma attaches which affects future employment opportunities; this type of harm does not violate an employee's liberty interests. Ratliff v. City of Milwaukee, 795 F.2d 612, 625 (7th Cir. 1986). In order to implicate a liberty interest, a person's reputation must be affected in a manner that makes it "virtually impossible to find new employment in a chosen field." Townsend, 256 F.3d at 670. "Liberty is not infringed by a label of incompetence or a failure to meet a specific level of management skills, which would only affect one's professional life and force one down a few notches in the professional hierarchy." Simpkins v. Sandwich Cmty. Hosp., 854 F.2d 215, 218 (7th Cir. 1988). The Due Process clause does not protect a unilateral expectation of continued employment at the

present employer.  Id.  To make a valid claim for deprivation of a liberty interest, a plaintiff must prove she was foreclosed from future employment opportunities.  Townsend, 256 F.3d at 670.

Plaintiff's sole argument in support of this claim is that she lost her employment at the Wells Center due to her dismissal from the IDOC, and was therefore foreclosed from employment with the Wells Center and from employment at any IDOC facility.  However, losing her job at the Wells Center is not sufficient to show a deprivation of liberty interest.  Plaintiff must show she lost *future* employment opportunities as a result of Defendants' conduct.  Plaintiff has made no showing that she was unable to obtain future employment as a result of any stigmatizing information disclosed by Defendants.

Plaintiff argues she is foreclosed from working at all IDOC facilities and is therefore locked out of a chosen field.  Plaintiff likens her case to Larry v. Lawler, in which the Seventh Circuit ruled that a plaintiff who had been barred from all federal employment for three years demonstrated sufficient foreclosure of opportunities.  Larry v. Lawler, 605 F.2d 954, 958-59 (7th Cir. 1978).  This comparison, however, is overly broad and goes beyond construing the facts in a light favorable to Plaintiff.   Though Plaintiff is not allowed to work with the Wells Center, she is not barred from a category of employment as far reaching as "all federal employment."  Rather, Plaintiff's situation is more comparable to that in Townsend, in which the Seventh Circuit ruled that being barred from employment in the Chicago Public Schools was not sufficient to implicate a deprivation of liberty interest because it was only one of many municipal employers. Townsend, 256 F.3d at 671-72.  There is no indication that Plaintiff has been barred from all state or government employment.  She has only been prevented from obtaining employment with IDOC, which is only a small portion of state jobs available.

Moreover, Plaintiff has not shown she is foreclosed from working in her chosen profession as a counselor. Plaintiff has applied for several counseling positions outside of IDOC since her dismissal from the Wells Center. She is currently employed as an Admissions Coordinator at Ashford University. The only reasons she gives as to why she did not receive the counseling positions she applied for are because the salary was too low or there were numerous applicants for the position. In most cases, Plaintiff gave no reason as to why she was not selected for the job. Most significantly, at no time does Plaintiff allege that she failed to obtain a counseling job because a potential employer had information about accusations of misconduct. Based on these facts, Plaintiff has neither presented any evidence nor stated in any way, shape or form that she was foreclosed from any employment opportunity as a result of the public disclosure of stigmatizing information. Because Plaintiff has not been denied any position in her chosen field based on the disclosure of stigmatizing information, she has not raised a triable issue of fact as to whether she has had a tangible loss in future employment opportunities.

As Plaintiff has failed to produce any evidence in support of her deprivation of liberty claim, the Defendants' Motion for Summary Judgment is GRANTED.

## **MOTION TO STRIKE**

Defendants move to strike Exhibits 5, 6, and 8 as inadmissible evidence. Exhibits 5 and 6 are incident reports filed by Plaintiff regarding accusations allegedly made about her by Defendant Smith. Defendants allege that these incident reports contain double hearsay and are, therefore, inadmissible under the business records exception to the hearsay rule. Exhibit 8 is a memorandum titled "Meeting at Kewanee June 8, 2005." Defendants object to its admission as hearsay because it fails to identify the author of the document and does not name the IDOC staff referenced in the memo.

Exhibits 5 and 6 contain double hearsay and are inadmissible as evidence under the business records exception. Double hearsay exists when a business record is prepared by an employee with information supplied by another person. Wilson v. Zapata, 939 F.2d 260, 271 (5th Cir. 1991). When the source of information is an outsider to the business, the business record is not admissible unless the outsider's statement falls within another hearsay exception. Datamatic Svcs., Inc. v. United States, 909 F.2d 1029,1032 (7th Cir. 1990).

Exhibit 5 is an incident report filled out by Plaintiff recounting a conversation she had with a youth. In the report, Plaintiff alleges that the youth told her Major Smith was having another youth "watch this staff [Plaintiff] for him," and that the youth was to report to Defendant Smith every time Plaintiff was with Youth K. Exhibit 6 is also an incident report authored by Plaintiff recounting a conversation with a youth supervisor at the KYC. In the report, Plaintiff alleges that the youth supervisor told her Major Smith said he had seen Plaintiff sitting on the floor with another youth's head in her lap. Because the information in both the documents was proved by "outsiders" to the business, neither of these documents is admissible through the business records exception. Plaintiff has offered no other exception under which this type of hearsay would be admissible. Therefore, Defendants' Motion to Strike is GRANTED as to Exhibits 5 and 6.

To be admissible as evidence, a business record must have "sufficient indicia of trustworthiness to be considered reliable." Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000). Generally, the party seeking to admit the business record must attach an affidavit from a person qualified to introduce the document at trial and authenticate it as a business record. Id. An exception to the rule applies when the party challenging the document as admissible evidence has itself relied on that document or "otherwise conceded the accuracy of the

documents." Thanongsinh v. Bd. of Educ., 462 F.3d 762, 778 (7th Cir. 2006) (quoting Woods, 234 F.3d at 988).

Exhibit 8 is a memorandum written by an employee of the Wells Center describing a meeting with employees of the DOC regarding Plaintiff's discharge from the DOC. The memo indicates it was written on June 8, 2005, but does not identify the author or the DOC employees involved. Defendants argue that Plaintiff submitted this exhibit for the truth of the matter asserted within, namely that the statements made in the memo are attributable to one or both of the defendants.

Plaintiff has submitted no supporting affidavit authenticating the memorandum or indicating which IDOC employees were present. Though Defendant Stoudt admits she informed Wells Center staff of her decision to deny Plaintiff access to the KYC (Stoudt aff. ¶ 21), there is no concession that the memorandum is a record of that conversation. Further, Defendants themselves do not rely on the memorandum as evidence.

Therefore, because Plaintiff has failed to authenticate the trustworthiness and reliability of Exhibit 8, Defendants' Motion to Strike is GRANTED.

## CONCLUSION

IT IS THEREFORE ORDERED that the Defendants' Motion for Summary Judgment is GRANTED.

CASE TERMINATED

ENTERED this   24th   day of July, 2008.

> s/Joe Billy McDade
> Joe Billy McDade
> United States District Judge